I'm going to try to reserve two and a half minutes for rebuttal if I can. What the first issue in this case is about, the substantive issue of guilt, is really just applying some basic principles of statutory construction to a statute. You have a statute with two clauses. The first clause grants citizenship to a child of a naturalized parent if the child is, quote, residing in the United States pursuant to a lawful admission for permanent residence, unquote. The second clause grants citizenship if the child is, quote, residing permanently in the United States, unquote. The question is whether you're going to read the word lawful into the second clause, which is what the government is asking you to do and what the district court did. There's at least three or four principles of statutory construction that say you don't do that. First, the rule that you start by looking at the plain language of the statute in its ordinary meaning. Reside means to live in. Permanently means indefinitely, without any intention of leaving. Neither one of those words means lawful. Well, how could you be here permanently if you weren't here lawfully? Well, you could be the, permanently actually means intending to stay. I quote a dictionary definition in my papers, and you have an intent to stay and you have an intent to be here permanently, and you are permanently as far as you are concerned, indefinitely, no reason to leave without being here lawfully. Now, you're going to get kicked out if you get kicked out, perhaps, but your intention and your plan is you're here permanently. Second, Your Honor, there's the rule that courts don't read words into statutes that aren't there. And of course, the word lawful is not in the statute. Third, and I think most significant in this case, is the principle that you especially don't read words into a statute where the word is affirmatively used in one place and not in another. Because that tells you that Congress knew how to put the word in and did put the word in when it wanted to, and they didn't when they didn't want to. And here we know that Congress knew how to put in the word lawful when it wanted to because they did that in the other clause in the very same subparagraph of the very same subsection of the statute. What do you think Congress was really up to when they added that clause? The lawful, the lawful. Well, I think what Congress was doing, this was part, as I understand it, of a sort of overall revision of the immigration statutes. And I think Congress was basically looking at everything anew. And what I submit Congress was doing was creating what I think is at least one very logical approach to this. They were saying, first of all, we're going to take the group of people who have a legal right to be here, people who have a green permission to permanent residence, and they're going to get this right to citizenship when their parents naturalized. So we're going to look at that group with a legal right. And then we're going to look at the group with a factual status, the people who are in fact actually here, actually permanently residing, whether or not they're legal. And if their parent naturalizes, we're going to let them stay. So your argument would apply to those who were here prior, illegally, prior to the naturalization of their parents? I think so, because the, I mean, well, they would have to. That doesn't fall, that doesn't, that situation doesn't fall within the clause. Well, they'd have to, they'd have to continue to reside permanently afterwards. So if they for some reason stopped when their parents were naturalized. So under your argument, those who were here prior to, but illegally, not without status. Their parents then become, the parents then become naturalized. So under your construction of this last clause, those children would also be entitled to derivative citizenship? If they continue to reside permanently. If for some strange reason the child a month after the, at the time their parent naturalized had a plan to leave and was going to be leaving in a month to go back to Mexico or El Salvador or wherever, then no. But I think in the far more, you know, far more common case, that would be true, because there would be that reside permanently status in terms of what the, what the person had or the child had in mind or the parent had in mind for the child. It's especially. What do we do about the Schneider case? Well, what you do about the Schneider case, Your Honor, is I think it doesn't control for two reasons. First of all, I'm frankly not sure whether it carries any more weight than a Supreme Court summary affirmance when you have this one sentence affirmation of a district court opinion. But I don't even know if you have to go there, frankly. And by the way, this is, as I understand it, before there was any possibility of doing unpublished opinions. So the Ninth Circuit was stuck with doing it one way or the other. But more important than that, Your Honor, the statute was a completely different statute, or at least it was a different statute. And in particular, what the statute that the Schneider Court was interpreting in 1947 did not have in it was the contrasting language that's a key part of my argument, the lawful admission for permanent residence contrast in the other clause of the very same subparagraph of the same subsection of the statute. So Schneider was looking at a different statute. Schneider didn't have to consider that key principle of statutory construction that I think is one of the most powerful arguments for the defense position here. So I think certainly then a one-sentence affirmance by this Court in 1947 doesn't control this later 1952 statute. And that's not — that's an important difference. It's a difference that works very significantly into the statutory construction argument. And the Congress has since modified that statute again? Yes. In 2000 — well, they modified it in 1978 to change the age from 16 to 18. But most significantly in 2000, they basically eliminated Section 1432 and carried it over in part to Sections 1431 and 1433. But I don't think they kept it as broad as it was before 2000. You sort of have to pick at the language of 1431 and 1432 to really work through that. But, of course, that's not the issue here because we're talking about whether Mr. Diaz-Guerrero became a citizen in the early 80s. Because there, the current version of the statute, it expressly says, pursuant to lawful admission. I think that's correct. Which is in contrast, once again, to the other statute. But you clearly have a revamping there. You have a complete elimination of Section 1432. And I think there you have maybe something similar to the overall revamping that took place in 1952. They're probably not as all-encompassing. I see I'm running out of time a little bit. I do want to note just briefly that I think the sentencing error here is also very important, if you don't reverse on the substantive issues. I think there's sentencing error in at least two respects. First, I would submit it's not even clear that district court applied the guidelines correctly in terms of the cultural assimilation departure ground. It did say it was exercising discretion, but it also talked like community ties, which here basically meant knowing no one in Mexico and knowing no life but an American one because he came here when he was one and never lived in Mexico wasn't enough. That was certainly at least a tenor of what the district court was saying. And you should remember that the test for remand under the guidelines, some of the old guidelines, is just whether there was some doubt. And those words come directly out of an opinion of this Court about the district court understanding its authority. Second, you have Booker error here, Your Honor, obviously, and I would submit it is plain error. In terms of the district court's thinking about how the guidelines bound it and how that affected it and how that controlled what it did, I just wanted to read the following from excerpt page 91. Believe me, Mr. Diaz, I can understand the dilemma that Mr. Diaz-Guerrero is in and since he's lived here all his life and he doesn't have any family, I guess, in either spot. But as you know, in order for me to grant the Dunwoody departure, I do have to make a finding, a factual finding, that Mr. Diaz-Guerrero's case is outside of the heartland of the typical cases that I see come in. I think it's crystal clear that we have plain error here in terms of not applying Booker, given the district court clearly saying that she felt bound to do this outside-the-heartland type approach. Let me ask you, Mr. Is it Sixth Amendment errors or is it just a sentencing under the mandatory guidelines that's the Booker error? It's error in treating the guidelines as mandatory. In treating the guidelines as something where you have to make a, quote, outside-the-heartland unquote finding. There was no fact finding by the judge. The only fact that was found was that there was the prior conviction for an aggravated felony, which at least so far is still not error. Okay. All right. Thank you, counsel. May it please the Court. Dorothy Kim on behalf of the government. Your Honor, the district court did not abuse its discretion when it denied the defendant's motion to dismiss the indictment and the defendant's proffered jury instruction regarding derivative citizenship. With respect to the defendant's derivative citizenship argument, even assuming that all of the defendant's proffered facts were true, and I would remind the Court that one of the proffered facts was that the defendant's mother was named Sarah Diaz, and this defendant's mother was allegedly 60 years old at the time the defendant was born. Even assuming all those facts were true, the defendant could not satisfy the elements of Section 1432. Your Honor, the Schneider case is directly on point, and the Schneider case states that to reside permanently means to reside permanently and lawfully. Your Honors, the defendant's own canon of statutory interpretation cuts against the defendant's argument. If you read the Immigration and Nationality Act as a whole, you can determine that Congress has very special meanings when it uses terms like reside permanently and in earlier versions of the statute dwell. In fact, Congress has demonstrated that when it means to state what the defendant states to reside permanently, when it means to convey the idea that a person just being present and residing in the United States is sufficient to satisfy the statute, it knows how to so specify. I would draw the Court's attention to former Section 1254. That was enacted in 1952, and it was repealed in 1996. But in that statute, the Congress allows an alien the option of voluntary departure rather than deportation if the alien can demonstrate that he has been physically present in the U.S. for a continuous period of not less than a certain period of years. In addition, Section 1255A grants certain temporary resident status, and an earlier version of that act provided that an alien must establish that he has been continuously physically present. All right. Counsel, let's talk about this Act, though. There's some definitions in this Act. Yes, Your Honor. And it says the term lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently. So that is the legal requirement. Yes, Your Honor. But if you go to paragraph 31, it says the term permanent means a relationship of continuing or lasting nature as distinguished from temporary. But a relationship may be permanent even though it is one that may be dissolved eventually at the instance of either the United States or of the individual in accordance with law. Doesn't that comport with what Mr. Gunn is arguing, that it doesn't have a requirement of lawful admission, it's just you intend to be there, I guess, until you get caught and get deported? Well, Your Honor, residence, though, connotes a lawful admission. And residence should be permanent. Oh, no. Residence is also defined in this statute. And the Schneider court wasn't considering this statute, so it didn't really have the benefit of the definitions that Congress provided in order to interpret this statute. Yes, Your Honor. But the very same term that the Schneider court interpreted is also present in this statute. Secondly, because pursuant to a lawful admission for permanent residence is a term of art that describes a legal permanent resident or an LPR, one could envision a scenario where someone was here permanently residing or who was here lawfully, for instance, if someone had entered with a visa. That person would be in a category that was included in the government's definition of reside permanently, but would not be included in the first clause, which is pursuant to a lawful admission for a permanent residence. And, Your Honor, Your Honor asked defense counsel about what did Congress actually mean by this, this statute. Congress could have meant one of two things, and either definition does not comport with the defendant's reading of the statute. Either Congress meant the most restrictive interpretation of the statute. Either Congress meant a person who is here pursuant to lawful admission, an LPR, may become a citizen upon the naturalization of his mother or parent, or someone may, before reaching the age of majority, enter the United States and thereafter begin to reside permanently as an LPR, and that person also would become a citizen under the derivative citizenship statute. Or in the government's broader reading of the statute, a person who was not residing in the United States or perhaps residing unlawfully in the United States with no citizenship status could leave the country and under what the defendant terms of fiction of INS, reenter the country lawfully, and therefore gain status, for instance, with a visa, and that person also would be able to derive citizenship, even though that person would not have been able to under the first reading of the – I'm sorry, under the first clause of 1432. Your Honor, and – When was the statute repealed? 2000, Your Honor. Are you seeing a lot of cases under the statute? No, Your Honor. There is a dearth of cases. And as defense counsel points out, the derivative citizenship statute that was at issue in Snyder was under the 1940 Immigration and Nationality Act. And I've been able to find no case interpreting the 1952 Act, except for the fact that I would submit you should interpret the very same language in the very same statute, which was the derivative citizenship statute, the same way under both acts. Your Honor, in the three cases cited in the government's brief, in each of those cases, reside permanently meant reside lawfully, and the defendant cannot cite to a single case in which reside permanently means simply to reside with subjective intent to remain in the United States. And the government submits that that's an unreasonable reading of the statute. What is the meaning of the phrase, thereafter begins to reside permanently? Why is that in there? Well, Your Honor, the government submits that that is in there in order to permit people who reenter the United States under a visa or also to cover a class of people who are not LPRs and therefore under the definition pursuant to a lawful admission. So those people who are in the United States lawfully, albeit not as an LPR, would be able to satisfy the statute, so long as they were to make a claim for derivative citizenship. And that's, in fact, what the Schneider court found. That it did not mean LPR, but it meant someone who had entered lawfully and therefore had status. That sort of takes care of my example, my question about children who are here without status and their parents, one of their parents gets citizenship. If they leave and enter with a visa. Yes, Your Honor. They could qualify for derivative citizenship. Yes, Your Honor. Your Honor, there is an alternative basis on which the district court could affirm, I'm sorry, in which this court could affirm the district court's decision and that's the argument that was put forth in the government's answering brief. That the defendant never applied for a citizenship certificate with the INS. Your Honor, in this case, the equity suggests that the court could consider this alternative argument because it is not in dispute that the defendant never petitioned with the INS. I think that'd be a question for the jury. I'm assuming, I mean, just assume that for, hypothetically, that we were going to say, well, Congress didn't write it in this statute. So it goes back. What are your factual arguments about, you know, the mother, Sarah Diaz, and she was 60 years old at the time, and he never made an application. Wouldn't that all go to the jury to kind of decide whether he actually has that defense to Section 1326? Well, Your Honor, because derivative citizenship is a defense, the defendant would have to proffer sufficient evidence to demonstrate that he was entitled to a jury instruction regarding derivative citizenship. And the government's argument is based on the uncontroverted facts. Even assuming that Sarah Diaz was the defendant's mother, and again, the government would not concede that in the district court, the defendant could not make a claim of derivative citizenship because he did not make an initial claim to the INS. The, there are two ways that a person can become a citizen. The first is by being born in the United States, and that right is conferred by the 14th Amendment. The second way a person may become a citizen is to become naturalized. And because Congress has plenary authority, Congress may prescribe the ways in which a person becomes a citizen. And in this case, Congress has stated when a child claims derivative citizenship, he must make a claim with the INS. Is there any time frame for that? Your Honor, reading Section 1432, it would have to be before the child became an age of majority, or, as was the case in, I believe it's the Holland case, a person can petition, and usually this is done when there's an order of deportation. A person can petition with the INS after reaching the age of majority, and argue by, through an evidentiary record, that they became a citizen based on either being born to a citizen parent or being present when, lawfully, when the parent became naturalized. All right. Thank you very much, counsel. Thank you, Your Honor. Did I have 35 seconds, Your Honor? I think you have 33. I'm going to try to make four quick points. First of all, I don't think it's correct to say it was not disputed that he never made an application for citizenship. It certainly might have been disputed if the issue had ever been raised in the district court, and it wasn't, and that's why I don't think you can affirm on that ground. Second, I'd refer you to my reply brief, where I think I go in some depth into the point that citizenship may be recognized by INS, but it's not determined by INS. Derivative citizenship exists when the underlying facts exist. It doesn't depend on INS recognizing it. Third, with respect to the government's argument that somehow, okay, you don't have to have legal residence, but you have to have legal entry, that doesn't fly for two reasons. First, you still have to then read language into the statute which isn't there, namely, after having entered legally. That language is not in the clause in question. Second, this Court has rejected that exact distinction in a case where I believe you actually sat on the panel, Judge Warlaw, United States v. Pena Jaime, where under the illegal reentry statute, the Court said it didn't matter whether the defendant had simply stayed illegally after entering legally or had entered illegally to start with. I think the same distinction should be rejected here to be consistent. All right. Thank you, Counsel. Thank you. And U.S. v. Diaz-Guerrero is submitted. We will turn to U.S. v. Sanders.
judges: Hall, Wardlaw, Paez